Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donna McCabe, Diane McCabe, on behalf of themselves and others similarly situated, Gary A. Barrett, Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon, Larry L. Robertson, Nancy K. Robertson, Ross Wade, Maureen Wade, Plaintiffs,

Bart H. Dye, Appellant,

v.

Mike ESPY,* Secretary of Agriculture, Charles W. Shuman, Administrator of the Farmers Home Administration, Ralph W. Leet, State Director of the Farmers Home Administration, Harold T. Aasmundstad, District Director of the Farmers Home Administration of North Dakota, Glen W. Binegar, as District Director of the Farmers Home Administration of North Dakota, Allen G. Drege, as District Director of the Farmers Home Administration of North Dakota, Dennis W. Larson, as District Director of the Farmers Home Administration of North Dakota, Odell O. Ottmar, as District Director of the Farmers Home Administration of North Dakota, Joseph J. Schneider, as District Director of the Farmers Home Administration of North Dakota, Samuel Delvo, as County Supervisor of the Farm-

---

* Mike Espy is substituted for former Secretary of Agriculture Edward Madigan as an appellee in this action pursuant to Fed.R.App.P. 43(c).

ers Home Administration in North Dakota, Lorace Hakanson, as County Supervisor of the Farmers Home Administration in North Dakota, Larry Leier, as County Supervisor of the Farmers Home Administration in North Dakota, Charles Schaefer, as County Supervisor of the Farmers Home Administration in North Dakota, James Well, as County Supervisor of the Farmers Home Administration in North Dakota, Ralph W. Leet, State Director of the Farmers Home Administration, Appellees.

Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donna McCabe, Diane McCabe, on behalf of themselves and others similarly situated, Gary A. Barrett, Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon, Larry L. Robertson, Nancy K. Robertson, Ross Wade, Maureen Wade, Plaintiffs,

Carl Saine, Judie Saine, Appellants,

v.

Mike ESPY, Secretary of Agriculture, Charles W. Shuman, Administrator of the Farmers Home Administration, Ralph W. Leet, State Director of the Farmers Home Administration, Harold T. Aasmundstad, District Director of the Farmers Home Administration of North Dakota, Glen W. Binegar, as District Director of the Farmers Home Administration of North Dakota, Allen G. Drege, as District Director of the Farmers Home Administration of North Dakota, Dennis W. Larson, as District Director of the Farmers Home Administration of North Dakota, Odell O. Ottmar, as District Director of the Farmers Home Administration of North Dakota, Joseph J. Schneider, as District Director of the Farmers Home Administration of North Dakota, Samuel Delvo, as County Supervisor of the Farmers Home Administration in North Dakota, Lorace Hakanson, as County Supervisor of the Farmers Home Administration in North Dakota, Larry Leier,

as County Supervisor of the Farmers Home Administration in North Dakota, Charles Schaefer, as County Supervisor of the Farmers Home Administration in North Dakota, James Well, as County Supervisor of the Farmers Home Administration in North Dakota, Appellees.

Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donna McCabe, Diane McCabe, on behalf of themselves and others similarly situated, Gary A. Barrett, Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon, Larry L. Robertson, Nancy K. Robertson, Ross Wade, Maureen Wade, Plaintiffs,

Leonard Doran, Audrey A. Doran, Appellants,

v.

Mike ESPY, Secretary of Agriculture, Charles W. Shuman, Administrator of the Farmers Home Administration, Ralph W. Leet, State Director of the Farmers Home Administration, Harold T. Aasmundstad, District Director of the Farmers Home Administration of North Dakota, Glen W. Binegar, as District Director of the Farmers Home Administration of North Dakota, Allen G. Drege, as District Director of the Farmers Home Administration of North Dakota, Dennis W. Larson, as District Director of the Farmers Home Administration of North Dakota, Odell O. Ottmar, as District Director of the Farmers Home Administration of North Dakota, Joseph J. Schneider, as District Director of the Farmers Home Administration of North Dakota, Samuel Delvo, as County Supervisor of the Farmers Home Administration in North Dakota, Lorace Hakanson, as County Supervisor of the Farmers Home Administration in North Dakota, Larry Leier, as County Supervisor of the Farmers Home Administration in North Dakota,

Charles Schaefer, as County Supervisor of the Farmers Home Administration in North Dakota, James Well, as County Supervisor of the Farmers Home Administration of North Dakota, Appellees.

Nos. 91–3123, 91–3384.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Feb. 23, 1993.

Rehearing and Rehearing En Banc Denied April 5, 1993.

Michael D. Calhoun, Durham, NC, argued, for appellants.

Michael Robinson, Dept. of Justice, Washington, DC, argued, for appellees.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BOGUE,** Senior District Judge.

MAGILL, Circuit Judge.

This case comes to us on appeal from a decision by the district court [1] dismissing as moot an action against officers of the Farmers Home Administration (FmHA). The appellants claim that the FmHA violated a court ordered injunction and they seek civil compensatory contempt damages. We affirm the decision of the district court dismissing these actions, although we do so on different grounds. We hold that these compensatory civil contempt actions are barred under the doctrine of sovereign immunity.

## I.

### A. Procedural History

These contempt proceedings arise out of a dispute that has been litigated in this and other federal courts for almost ten years. We provide a brief synopsis of the salient procedural history up to this point.

---

** THE HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota.

The three appellants in this case are members of the nationwide plaintiff class of farmers originally recognized in *Coleman v. Block*, 100 F.R.D. 705 (D.N.D. 1983). The plaintiffs of *Coleman* alleged, principally, that the then existing liquidation and acceleration procedures for farming loans provided by the FmHA violated their constitutional due process rights. The district court issued a nationwide permanent injunction on February 17, 1984. This injunction essentially required the FmHA, among other things, to give a farmer notice of options available through the FmHA loan deferral program before the FmHA could demand "voluntary conveyance" of the farmer's property or deprive the farmer of property in which the FmHA had an interest. *Coleman v. Block*, 580 F.Supp. 194, 210–11 (D.N.D.1984).[2]

On November 1, 1985, the FmHA promulgated new regulations regarding the servicing and foreclosure of loans with the plaintiff class. The *Coleman* plaintiffs challenged these regulations. The district court rejected some, but not all, of the challenges to these new regulations. *Coleman v. Block*, 663 F.Supp. 1315 (D.N.D. 1987). The parties cross-appealed to this court. During the pendency of this appeal, the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568, was enacted. Because the passage of the Agricultural Credit Act rendered the class action moot, this court ordered the complaint dismissed. *Coleman v. Lyng*, 864 F.2d 604 (8th Cir. 1988), *cert. denied*, 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). The district court dismissed the *Coleman* case on February 21, 1989.

### B. The Appellants

On October 21, 1985, appellant Bart H. Dye filed, as a separate action, a petition for contempt in the district court. Dye, a farmer from Indiana who had outstanding unpaid loans to the FmHA, alleged that certain FmHA officials had violated the *Coleman* injunction by failing to give him notice before demanding voluntary conveyance of security property for his loans. The remedy sought was an order of contempt against the FmHA and "compensatory relief in a sum which adequately compensates [him] under the circumstances herein, attorney's fees, cost of this action, and all other relief just and proper in the premises." Bart H. Dye Petition for Contempt and Complaint for Damages at 5. On May 7, 1990, Dye filed a motion for summary judgment.

On February 2, 1990, Carl and Judie Saine, farmers from North Carolina, filed a motion to find certain FmHA officials in contempt. Like Mr. Dye, the Saines contend that, during the time the *Coleman* injunction was in place, the FmHA demanded voluntary conveyance of their farm and equipment to the FmHA without providing them the required notice under the injunction. The Saines asked the district court to:

> (b) Enter an order requiring defendants to: reconvey to plaintiffs all real and personal property now in their pos-

---

**2.** Specifically, the district court ordered, among other things:

> That the defendants, their agents, subordinates, and employees, are enjoined from:
> —Accelerating the indebtedness of the plaintiffs,
> —Foreclosing on the real property or chattels of the plaintiffs,
> —Demanding voluntary conveyance by the plaintiffs, or
> —Repossessing chattels of the plaintiffs or in any way proceeding against or depriving the plaintiffs of property in which the defendants have a security interest,
> unless:
> 1. defendants shall give any plaintiffs against whom the defendants propose to proceed at least 30 days notice:

> a. That informs the borrower of his right to a hearing to contest the proposed action and to establish eligibility for loan deferral pursuant to 7 U.S.C. § 1981a;
> b. That provides the borrower with a statement that gives the reasons for the proposed action;
> c. That informs the borrower of the factors that determine eligibility for loan deferral;
> d. That informs the borrower of the official who would preside at the hearing. The official designated shall not have been actively involved in the initial decision to take the proposed action.

*Coleman v. Block*, 580 F.Supp. 194, 211 (D.N.D. 1984).

session as a result of the wrongful acts herein alleged; provide further financing and services to plaintiffs as required by the applicable statutes and regulations of the FmHA; and pay to plaintiffs damages in an amount sufficient to compensate plaintiffs for the lost (sic) of income and profits they suffered as a result of defendants' wrongful acts alleged herein and further damages sufficient to compensate plaintiffs for the emotional distress and pain they have suffered as a result of all defendants' wrongful acts.

Motion by Carl and Judie Saine to Find Contempt at 4.

Leonard and Audrey Doran are farmers from Montana. They too contend that they have been damaged by certain FmHA officials' violations of the *Coleman* injunction. The Dorans claim that the FmHA's failure to give them notice of their FmHA loan restructuring options pursuant to the *Coleman* injunctions led to the foreclosure on a loan by a private primary lender who held a first mortgage. The Dorans filed a motion for contempt on March 13, 1990, seeking the return of their land, equipment, and supplies, an adjudication that the title to their land was obtained by fraud, and other damages. Motion by Leonard and Audrey Doran to Find Contempt at 8–10.

These three motions for contempt were consolidated before the North Dakota district court which had issued the *Coleman* injunction. The FmHA moved for dismissal on October 15, 1990. On July 5, 1991, the district court granted the FmHA's motion. It held that all of these contempt actions had been mooted by the dismissal of *Coleman* and, therefore, dismissed the actions.

## II.

We begin our analysis by pointing out that these actions are in actuality actions against the United States government. These contempt proceedings seek to compel the government to take certain steps to compensate the appellants for their losses. Specifically, the appellants seek return of property and actual government expenditures for compensatory damages for their perceived losses. A suit against the sovereign is one where the judgment sought would expend the public treasury, restrain the government from acting, or compel it to act. *See Hagemeier v. Block*, 806 F.2d 197, 202 (8th Cir.1986), *cert. denied*, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987); *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949). The appellants all are seeking contempt sanctions against various FmHA officials who were acting in their official capacities. As long as the government entity receives notice and an opportunity to respond, a suit against a government employee in his official capacity is to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985).

The United States can only be sued when it has expressly given its consent to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Block v. North Dakota ex rel. Board of Univ. & Sch. Lands*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). This consent must be clear and unequivocal and it will not be simply implied. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Indeed, the Supreme Court has stressed that waivers of sovereign immunity should be strictly construed. *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986). Sovereign immunity bars claims against federal officials in their official capacity unless a waiver is unequivocally expressed by Congress. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

The appellants are seeking civil contempt judgments against the FmHA for

violations of the *Coleman* injunction.[3] There are two kinds of civil contempt: coercive and compensatory. *Klett v. Pim,* 965 F.2d 587, 590 (8th Cir.1992); *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). With coercive contempt penalties, the court issues sanctions such as fines or incarceration to force the offending party to comply with the court's order. *Klett,* 965 F.2d at 590. With compensatory contempt, the court attempts to compensate the plaintiff for the damage that the offending party has caused by its contempt. *Id.* In this action, the appellants are seeking compensatory relief as opposed to coercive relief. They petition the court for damages caused by past actions of the FmHA. Furthermore, because the injunction has been mooted by legislation and these actions involve events that occurred in the mid 1980s, the appellants are not seeking future compliance with the *Coleman* injunction.

■■■■ The district court held that these actions were mooted by the Agricultural Credit Act of 1987. Compensatory civil contempt actions do not survive if the underlying injunction is vacated because it was issued erroneously. *Klett,* 965 F.2d at 590; *United Mine Workers,* 330 U.S. at 295, 67 S.Ct. at 696. However, compensatory civil contempt proceedings may continue when the underlying injunction abates for a reason that does not go to the jurisdiction of the issuing court. *Klett,* 965 F.2d at 590; *see Petroleos Mexicanos v. Crawford Enters., Inc.,* 826 F.2d 392, 400 (5th Cir.1987); *Backo v. Local 281, United Bhd. of Carpenters & Joinders of Am.,* 438 F.2d 176, 182 (2d Cir.1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971). Here, the underlying injunction was not issued erroneously and only abated by a subsequent change in legislation. Therefore, given this circuit's recently decided *Klett* case, the district court's mootness rationale for its dismissal of these contempt proceedings was incorrect.

■■■ However, the district court's dismissal was still appropriate for a different reason. The appellants are not suing for statutory violations, but rather for failure to obey a court-imposed order. For purposes of determining whether these actions may proceed, we must determine whether there has been an explicit, unequivocal waiver of sovereign immunity to proceed for an action alleging compensatory civil contempt of such a judge-made order. We find that there is no such waiver.

Congress has enacted a statute governing the contempt powers of the federal courts. This statute, 18 U.S.C. § 401, reads in its entirety:

A court of the United States shall have such power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

This court has held that this statute governs civil as well as criminal contempt. *United States ex rel. Shell Oil Co. v. Barco Corp.,* 430 F.2d 998, 1000 (8th Cir.1970); *see also Taylor v. Finch,* 423 F.2d 1277, 1279 (8th Cir.) ("Courts have power to adjudge persons who willfully disobey their orders to be in contempt and such power extends to both civil and criminal contempt."), *cert. denied,* 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (1970). The *Klett* court also recognized the applicability of this section in a factual situation similar to this. *Klett,* 965 F.2d at 591.

---

**3.** Civil contempt is distinct from criminal contempt. To determine whether a contempt proceeding is civil or criminal, we must look at the substance of the proceeding and the character of the relief the proceeding will afford. *Hicks v. Feiock,* 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911); *see Hicks,* 485 U.S. at 631–32, 108 S.Ct. at 1429.

On the face of this statute, there is nothing to suggest that Congress intended to waive sovereign immunity. The statute does not address the issue and does not provide explicit, unequivocal language allowing the government to be sued. *See King*, 395 U.S. at 4, 89 S.Ct. at 1502. According to Supreme Court precedent, such a waiver must not be implied. *Id.*

The Supreme Court has never ruled on whether this statute constitutes a waiver of sovereign immunity. The cases interpreting this statute have consistently held that it should be narrowly construed as a limitation on lower federal court power to issue summary contempt orders. *See, e.g., Cammer v. United States*, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956) (holding that a lawyer is not the kind of "officer" who can be tried summarily for contempt under this statute); *In re Michael*, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945) (construing history of § 268 of the Judicial Code, precursor to 18 U.S.C. § 401, as embodying a congressional plan to limit the contempt power to the least possible power adequate to the end proposed); *Nye v. United States*, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941) (discussing the history of the Contempt Act of March 2, 1831, on which the modern 18 U.S.C. § 401 is based, and finding that its purpose was greatly to limit the contempt power of federal courts).[4] To prevail in their fight to show a waiver of sovereign immunity, the appellants must demonstrate a "legislative intent ... so clear and explicit as to brook no reasonable doubt." *Hubbard v. Environmental Protection Agency*, 982 F.2d 531, 532–33 (D.C.Cir.1992) (quoting *In re Perry*, 882 F.2d 534, 544 (1st Cir.1989)). The appellants have demonstrated no such legislative intent, nor have we been able to find one. Accordingly, we will not imply into this statute an express waiver of sovereign immunity for the federal government to be sued for civil compensatory contempt.

In a case almost identical to this one factually, this court has indicated its disinclination to allow the type of recovery appellants seek here. In *McBride v. Coleman*, 955 F.2d 571 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992), this court wrote:

> The government argues strenuously that sovereign immunity precludes an award against the government of compensatory damages, indistinguishable from those that might be awarded in a contract or tort action, in a civil contempt proceeding. This is a weighty argument, and we regard it very seriously. It does strike us as being a dubious proposition that by filing a contempt motion a claimant can be positioned to recover an unlimited amount of compensatory damages from the United States without being bound by the strictures of either the Tucker Act or the Federal Tort Claims Act, which are express (but carefully limited) waivers by the United States of its sovereign immunity with respect to contract and tort claims. Absent an express waiver of sovereign immunity, money awards cannot be imposed against the United States. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). *See also Barry v. Bowen*, 884 F.2d 442, 443–44 (9th Cir.1989) (holding that district court's award of monetary sanctions for contempt violated the sovereign immunity of the United States, but also reversing on other grounds). There does not appear to be any express waiver of sovereign immunity applicable to this case. We therefore have grave doubts that the contempt power can be carried as far as it has been carried against the United

---

4. For further discussions of the history of the Contempt Act of March 2, 1831, *see* Felix Frankfurter & James M. Landis, *Power of Congress over Procedure in Criminal Contempt in "Inferior" Federal Courts—A Study in Separation of Powers*, 37 Harv.L.Rev. 1010 (1924); Walter Nelles & Carol Weiss King, *Contempt by Publication in the United States to the Federal Contempt Statute*, 28 Colum.L.Rev. 401 (1928); Walter Nelles & Carol Weiss King, *Contempt by Publication in the United States Since the Federal Contempt Statute*, 28 Colum.L.Rev. 525 (1928).

States in the present litigation.[5]
*McBride,* 955 F.2d at 576–77 (footnote omitted).

 We agree with the quoted language from the *McBride* court and we adopt it to the present situation. The gravamen of the contempt actions here is that the *Coleman* injunction established a standard of care regarding the notice that must be given to its borrowers. The appellants contend that the FmHA officials failed to live up to this standard of care. The appellants further argue that they were consequently damaged by the officials' failure to adhere to the appropriate standard of care. They seek sanctions from the government to place them in the position they would be in if the standard of care had not been breached. We find this to be essentially a tort action, recovery for which must be sought through the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, and not through contempt proceedings. We note further that the FTCA provides that it is the exclusive remedy for such an action. 28 U.S.C. § 2679(b)(1).[6]

"[T]he contempt power is not to be used as a comprehensive device for redressing private injuries...." *McBride,* 955 F.2d at 577. We are able to find no authority that allows us to imply a waiver of federal sovereign immunity for civil compensatory contempt actions either in the statute defining federal courts' contempt powers or in its history. We note further that "in light of the potentially significant effect on the public fisc," we will not lightly imply such a waiver in this situation. *Hubbard,* 982 F.2d at 534. We simply do not think it is within our power to allow the appellants to proceed with these compensatory civil con-

tempt proceedings and to circumvent the strictures of the Federal Tort Claims Act which Congress specifically provided for this type of relief.

### III.

Accordingly, we affirm the decision of the district court dismissing the underlying actions for contempt, but on the grounds herein expressed.

---

5. The *McBride* court did not reach this final conclusion, however, and it held that the damages awarded by the district court were erroneous and not sustainable because they were not, in fact, caused by violation of the *Coleman* injunction. *Id.* at 577.

6. This section provides:
 The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of · the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
 28 U.S.C. § 2679(b)(1).