146 F.3d 392
 76 Fair Empl.Prac.Cas. (BNA) 1711,
73 Empl. Prac. Dec. P 45,421
Velda S. REED and Sharon L. McGuire, Plaintiffs-Appellants,
v.
Janet L. RENO, United States Attorney General; Charles
Stewart, Administrator, Federal Medical Center,
Federal Bureau of Prisons; and Kathy
Hawk, Director of Bureau of
Prisons, Defendants-Appellees.
 No. 97-5602.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 21, 1998.
Decided June 8, 1998.
 
 E. Douglas Richards (argued and briefed), Lexington, KY, for Plaintiffs-Appellants.
 Thomas Lee Gentry, Assistant U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Lexington, KY, for Defendants-Appellees.
 Before: RYAN, DAUGHTREY, and LAY,* Circuit Judges.
 OPINION
 DAUGHTREY, Circuit Judge.
 
 
 1
 The plaintiffs, Velda Reed and Sharon McGuire, brought an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, alleging that the Bureau of Prisons, a component of the Department of Justice, improperly refused to consider their applications for employment because of their ages. McGuire also brought an additional claim under the Veterans Preference Act. The plaintiffs now appeal the district court's grant of summary judgment in favor of the defendants, the Attorney General of the United States, the Administrator of Federal Medical Center (FMC) at Lexington, Kentucky, and the Director of the Bureau of Prisons.
 
 
 2
 The district court held that under 5 U.S.C. § 3307(e), the Department of Justice was authorized to set a maximum entry age limit for "law enforcement officers," and that the Department of Justice did not abuse its discretion in categorizing all employees working within federal prisons as "law enforcement officers." The district court further held that the federal government had not waived sovereign immunity under the Veterans Preference Act, thus depriving the court of jurisdiction over McGuire's alternative claim. We conclude that the district court ruled correctly and affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Velda Reed had applied for an accounting technician position at FMC-Lexington, which serves as a medical and psychiatric referral center for the Federal Bureau of Prisons. FMC-Lexington rejected Reed's application, indicating that "the maximum entry age for a position in the Bureau of Prisons is 36." Reed was 40 years old at the time.
 
 
 4
 Sharon L. McGuire applied for a position as a medical laboratory technologist at FMC-Lexington. Like Reed, McGuire's application was rejected because she had passed the maximum initial entry age for a law enforcement officer position with the Bureau. At the time, McGuire was 46 years old.
 
 
 5
 The Bureau of Prisons classifies all jobs within the Bureau of Prisons as law enforcement positions. The accounting technician position, for which Reed was rejected, consists of working in the prison office with prison employees and inmates. The job requires occasional "pat searches." Other duties include doing desk work, watching inmates eat, supervising prisoner computer usage, and searching empty bedrooms. The medical technologist job, for which McGuire was rejected, consists of ordinary laboratory duties. In addition, all prison personnel are required to be available for such duties as area searches and escape and fog patrol, and, as a condition to being hired, to undergo firearms, self-defense, and emergency response training.
 
 
 6
 Both women exhausted administrative remedies and filed suit in federal district court, alleging age discrimination. In McGuire's case, the district court granted the defendants' motion for summary judgment, stayed discovery, and held the action in abeyance until this court ruled on similar issues in Reed's case, which was already on appeal. Following remand in the Reed case for additional discovery, the district court consolidated the two cases for pretrial purposes and thereafter consolidated the cases for all purposes. Following discovery and cross-motions for summary judgment, the district court entered summary judgment in favor the defendants on both the ADEA claims and the Veterans Preference Act claim.
 
 DISCUSSION
 I.
 
 7
 The principal issue raised by Reed and McGuire is whether the positions they sought, that of accounting technician and of medical laboratory technologist, were properly classified as "law enforcement officer" positions, thereby exempting them from the provisions of the ADEA. They challenge Attorney General Edwin Meese's 1987 certification that all Bureau of Prison positions within federal detention facilities meet the definition of a "law enforcement officer," under the definition set forth under the Federal Employee's Retirement System (FERS) legislation enacted in 1986.
 
 
 8
 It is well-established that the maximum entry age for law enforcement officers is a valid exception to the ADEA. See Benford v. Frank, 943 F.2d 609, 613 (6th Cir.1991), and Patterson v. United States Postal Service, 901 F.2d 927, 929-30 (11th Cir.1990) (both holding that the Postal Service's policy of refusing to appoint anyone over the age of 35 to Postal Inspector does not violate the ADEA). The question then is whether the Department of Justice acted within its scope of authority granted by Congress when it classified all positions within the Bureau of Prisons as law enforcement officer positions.
 
 
 9
 When an agency is charged with the interpretation of a statute, this court must follow the dictates of Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Chevron court set out the following standard:
 
 
 10
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather if the statute is silent or ambiguous with respect to the specific issues, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 11
 Id. at 842-43, 104 S.Ct. 2778.
 
 
 12
 The reviewing " 'court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.' " CenTra, Inc. v. United States, 953 F.2d 1051, 1055-56 (6th Cir.1992) (quoting Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. 2778). Our initial inquiry, therefore, is whether Congress's intent as to § 8407(17) is clear and unambiguous. A brief overview of the origination of that statutory definition is necessary in order to make that determination.
 
 
 13
 A. Statutory Authority for Maximum Age Policies
 
 
 14
 In 1974, Congress enacted Public Law 93-350, 88 Stat. 355, a major piece of legislation designed to enhance the "youth and vigor" of federal law enforcement personnel.[1] Together with provisions on mandatory retirement[2] and incentives for early retirement,[3] Public law 93-350 provided agencies employing law enforcement officers with authority to set maximum ages for appointment to law enforcement positions. See 5 U.S.C. § 3307(d).[4] Under 5 U.S.C. § 8331(20), the term "law enforcement officer" is defined to include Bureau of Prisons employees "whose duties in connection with individuals in detention suspected or convicted of offenses against the criminal laws of the United States ... require frequent (as determined by the appropriate administrative authority with the concurrence of the Office) direct contact with these individuals in their detention, direction, supervision, inspection, training, employment, care, transportation, or rehabilitation." Finally, 5 U.S.C. § 3307(d) provides that a maximum age rule must be concurred in by an agency designated by the President. Subsequent executive orders assigned this concurrence responsibility to the Civil Service Commission and its successor, the Office of Personnel Management (OPM).
 
 
 15
 B. Establishment of the Bureau of Prison's Maximum Age Policy
 
 
 16
 Following passage of Public Law 93-350, the Department of Justice sought and obtained the concurrence of the Civil Service Commission in its determination that all Bureau of Prisons employees working within correctional facilities are "law enforcement officers" within the meaning of 5 U.S.C. § 8331(20). In 1975, Attorney General Edward H. Levi set the maximum age for appointment to law enforcement positions at 34. See DOJ Order 1338.1A, issued October 4, 1976. The maximum age for law enforcement positions has since been changed to 36. See DOJ Order 1338.1B, issued July 16, 1992.
 
 
 17
 C. Revised Definition of "Law Enforcement Officer"
 
 
 18
 In 1986, Congress created a new retirement scheme for federal employees, embodied in the Federal Employee's Retirement System (FERS) Act of 1986, 5 U.S.C. §§ 8401-79. This legislation completely reformed the retirement system for federal workers with the goal of reducing the cost of retirement to the federal budget. Under FERS the term "law enforcement officer" includes Bureau of Prisons employees "whose duties in connection with individuals in detention ... require frequent direct contact with these individuals in their detention and are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the head of the employing agency ..." § 8401(17)(D)(i). In 1988, Congress amended 5 U.S.C. § 3307(d) to add subsection (e) authorizing agency heads to set maximum entry level age restrictions for law enforcement officers, as defined in § 8401(17).
 
 
 19
 D. Interplay Between the ADEA and 5 U.S.C. § 3307
 
 
 20
 In Stewart v. Smith, 673 F.2d 485, 490 (D.C.Cir.1982), the D.C. Circuit was faced with reconciling 5 U.S.C. § 3307(d) with the ADEA. In that case, applicants for positions in the Bureau of Prisons correctional facilities challenged the Department of Justice's determination that all Bureau employees working in correctional facilities would be deemed law enforcement officers under § 8331(20)(A). In upholding this classification, the court reasoned:
 
 
 21
 In this case, applying the ADEA to the establishment of maximum entry ages for law enforcement officers would require us to adopt a strained reading of section 3307(d) and to ignore Congress' clear intent to employ maximum entry ages as a means towards securing a "young and vigorous" work force of law enforcement officers. We therefore agree with the district court that section 3307(d) is an exception to the ADEA.
 
 
 22
 673 F.2d at 492.
 
 
 23
 The plaintiffs argue that Stewart 's application is limited to the Civil Service Act and that, with the enactment of the FERS legislation, Stewart is no longer valid authority. We find no merit to this argument. Congress granted the Department of Justice the authority to set maximum entry ages for law enforcement officers under FERS pursuant to 5 U.S.C. § 3307(e). The FERS legislation, like the Civil Service Act, gives broad discretion to the Department of Justice to classify positions as "law enforcement officers." Under the Civil Service Act, the Department of Justice is given the authority to classify positions which "require frequent (as determined by the appropriate administrative authority with the concurrence of the Office ) [referring to OPM], direct contact with [detained individuals] in their detention, direction, supervision, inspection ..." as "law enforcement positions." 5 U.S.C. § 8331(20) (emphasis added). Under FERS, the Department of Justice is given the authority to classify as "law enforcement officers" those positions which "require frequent direct contact with [detained individuals] in their detention and are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the head of the employing agency." 5 U.S.C. § 8401(17)(D) (emphasis added). The FERS legislation, like the Civil Service Act, is plain on its face and grants the Department of Justice explicit authority to identify "law enforcement officer" positions. After the enactment of the FERS legislation, the Department of Justice chose to exercise the authority granted to it by Congress and classified all Bureau of Prisons positions as "law enforcement officers." Under § 3307(e), Congress granted the Department of Justice, as the head of the employing agency, the authority to set the maximum entry age for these positions.
 
 
 24
 In asking this court to disregard the Department of Justice's classification of Bureau of Prisons positions, the plaintiffs are asking us to substitute our judgment for the Attorney General's. Under Chevron, even where a statute is silent or ambiguous, which the FERS legislation is not, extreme deference is given to the agency's interpretation of the statute; our review is limited to determining only "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. In such a case, the appropriate standard of review for the Department of Justice's action is the abuse of discretion standard. See 5 U.S.C. § 706(2)(A) (providing that agency "actions, findings, and conclusions" may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). While such a standard "should not be a rubber stamp, [it] is deferential toward agency decisions." Goldin v. FDIC, 985 F.2d 261, 263 (6th Cir.1993).
 
 
 25
 In Stewart, the D.C. Circuit found that the Department of Justice had a rational basis for its determination that all employees in correctional facilities fall within the Civil Service Act's statutory definition of a law enforcement officer. Stewart, 673 F.2d at 495. The district court in Stewart had ordered the OPM, which had replaced the Civil Service Commission as the designated concurring agent, to review each Bureau of Prisons job classification for positions in correctional facilities. The Bureau of Prisons sent OPM: (1) 3000 job descriptions that on their face met the frequent direct contact requirement and (2) additional information on 766 positions that had job descriptions that did not facially meet the frequent direct contact requirement. Id. at 494-95 & n. 33. OPM also visited two prisons and determined that all employees working in the prisons directly encountered inmates with sufficient frequency. Id. at 495. Based on this information, OPM concluded that all Bureau of Prisons positions in correctional facilities met the frequent direct contact requirement. Id. at 495.
 
 
 26
 After the passage of the FERS legislation, the Attorney General undertook a second study to determine which of the Bureau of Prisons' jobs met the revised definition of law enforcement officer. In 1987, after reviewing position descriptions, the Bureau of Prisons recommended that all "in house" positions be classified as law enforcement positions. The Department of Justice reviewed all position descriptions and prepared a representative sample of such position descriptions for review by persons in the Department of Justice's chain of command. After the Department of Justice's internal review, the Attorney General adopted the recommendation of the Bureau of Prisons that all positions within the detention facilities be defined as law enforcement officers under FERS. Given this record, we conclude that the Department of Justice did not abuse its discretion when it classified all such positions as law enforcement officers.
 
 
 27
 The plaintiffs also contend that the Bureau of Prisons did not abide by regulations promulgated by the OPM when it defined its positions. Under these regulations, OPM directs agencies to classify as "law enforcement officers" those employees "occupying a rigorous position, whose primary duties are the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States." 5 C.F.R. § 842.802. These regulations, however, do not apply to a determination made pursuant to 5 U.S.C. § 3307(e). Unlike the Civil Service Act, the FERS legislation does not delegate authority to the OPM to review the employing agency's determination of "law enforcement officer" positions. See 5 U.S.C. § 8401(17)(d). Hence, the Attorney General, as head of the employing agency, is not bound by the definitions set forth in the regulations promulgated by the OPM.
 
 
 28
 In summary, we conclude that the plaintiffs' contentions must fail. Congress granted the Department of Justice, as the employing agency for the Bureau of Prisons, the authority under 5 U.S.C. § 3307(e) to set a maximum entry age limit for "law enforcement officers," and the Department of Justice did not abuse its discretion in categorizing all employees working within federal prisons as such.
 
 II.
 
 29
 McGuire argues that because she is a preference-eligible veteran, the Veterans Preference Act, 5 U.S.C. § 3312(a)(1), creates a waiver of the maximum entry age requirement in her case. Therefore, McGuire asserts, the Bureau of Prisons violated the Veterans Prison Act when it declined to hire her based upon her age.
 
 
 30
 McGuire's complaint cites 28 U.S.C. § 1331 as setting forth the requisite jurisdictional basis. On its face, McGuire's complaint falls within this court's federal question jurisdiction under 28 U.S.C. § 1331. Section 1331's general grant of federal question jurisdiction, however, "does not by its own terms waive sovereign immunity and vest in district courts plenary jurisdiction" over claims for money judgments against the United States. Sibley v. Ball, 924 F.2d 25, 28 (1st Cir.), aff'd upon transfer, 944 F.2d 913 (Fed.Cir.1991). Thus, the plaintiff faces the issue of sovereign immunity, which must be overcome in order to seek and obtain relief in this court. See Kanemoto v. Reno, 41 F.3d 641, 644 (Fed.Cir.1994) (suit against Attorney General for restitution for Japanese ancestors interned during World War II).
 
 
 31
 " 'The terms of the sovereign's consent to be sued in any court define that court's jurisdiction to entertain the suit.' " Id. (quoting United States v. Sherwood, 312 U.S. 584, 586-87, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The United States can be sued only "when it has expressly given its consent to be sued." Coleman v. Espy, 986 F.2d 1184, 1189 (8th Cir.1993). The waiver must be express, clear and unequivocal. Id. Further, the language of any waiver of sovereign immunity is strictly construed in favor of the United States. Markey v. United States, 27 Fed.Cl. 615, 622 (Fed.Cl.1993).
 
 
 32
 The Veterans Preference Act does not purport to waive sovereign immunity. Section 2108 of the Act merely defines the eligibility of "veterans" and "disabled veterans." 5 U.S.C. § 2108. See also Hill v. United States, 571 F.2d 1098, 1101 n. 5 (9th Cir.1978) (finding that the Veterans Preference Act legislation did not provide for the waiver of sovereign immunity). In light of the absence of an explicit waiver of sovereign immunity, this court cannot imply a waiver. United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).
 
 CONCLUSION
 
 33
 Congress has enacted legislation designed to enhance the "youth and vigor" of federal law enforcement personnel. Under that legislation, Congress has given agencies employing law enforcement officers the authority to set maximum ages for the appointment to law enforcement positions. Under this authority, the Department of Justice, as the employing agency, set the maximum hiring age at 36 for law enforcement officers. The FERS legislation granted the employing agency the discretion to categorize law enforcement officer positions, and we hold that the Department of Justice did not abuse its authority under FERS. Moreover, the Veterans Preference Act contains no waiver of sovereign immunity that would confer jurisdiction in this case. For these reasons, we AFFIRM the judgment of the district court, granting summary judgment to the defendants and dismissing the complaint.
 
 
 
 *
 The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 See H.R.Rep. No.93-463, 93d Cong., 1st Sess. 3-4 (1973); S.Rep.No.93-948, 93d Cong., 2d Sess. 2 (1974), U.S.Code Cong. & Admin.News 1974, p. 3698
 
 
 [2]
 Section 4 of Public Law 93-350, codified at 5 U.S.C. § 8335(g), provides in part:
 A law enforcement officer ... who is otherwise eligible for immediate retirement under § 8336(c) of this title shall be separated from the service on the last day of the month in which he becomes 55 years of age or completes 20 years of service if then over that age.
 
 
 [3]
 See Section 6 of Public Law 93-350, codified at 5 U.S.C. § 8339(d), which provides economic incentives for law enforcement officers to retire early and made it less worthwhile to work beyond 20 years
 
 
 [4]
 Section 3307(d) provides:
 The head of any agency may, with the concurrence of such agent as the President may designate, determine and fix the minimum and maximum limits of age within which an original appointment may be made to a position as a law enforcement officer or firefighter, as defined by section 8331(20) and (21), respectively, of this title.