**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GALO ALEJANDRO ORDONEZ,
            *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
            *Defendant-Appellee.*

No. 09-56533

D.C. No.
2:07-CV-03751
CBM

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted
April 13, 2012—Pasadena, California

Filed: May 29, 2012

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr.,
Circuit Judges, and Janis L. Sammartino, District Judge.*

Opinion by Judge Sammartino

---

*The Honorable Janis L. Sammartino, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

## COUNSEL

Alex Davis (argued), Candace Carroll, Michael Devitt, University of San Diego Legal Clinics, San Diego, California, for the plaintiff-appellant.

Jessica O. Cheh (argued), United States Attorney's Office, Los Angeles, California, for the defendant-appellee.

## OPINION

J. SAMMARTINO, District Judge:

Following Plaintiff-Appellant Galo Alejandro Ordonez's July 29, 1994, conviction for drug possession with intent to distribute, Ordonez sought the return of his property seized by the government during his arrest pursuant to Federal Rule of Criminal Procedure 41(g). Some of Ordonez's belongings were returned to his designated agent, but many were not returned, having been inadvertently lost or destroyed. Ordonez then sought equitable relief in the form of money damages to compensate for the missing property. The district

court granted the government's motion to dismiss, finding that sovereign immunity barred Ordonez's suit for money damages against the government.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ordonez was arrested on January 15, 1993, and ultimately convicted in the United States District Court for the Central District of California of drug possession with intent to distribute. He currently is serving a 480-month sentence.

Several items of Ordonez's personal property were seized and inventoried during his 1993 arrest. Following his conviction and sentencing, on June 11, 2007, Ordonez filed a pro se motion for the return of his seized property pursuant to Federal Rule of Criminal Procedure 41(g). After initially failing to respond, the government agreed to locate and return Ordonez's seized property. On September 27, 2007, some of Ordonez's belongings were returned to his designated agent.

The government filed a final accounting of the seized property on June 18, 2008. The final accounting listed the items that had already been returned to Ordonez's designated agent as well as a number of items "presumed to be lost or destroyed."

The government also attached as exhibits to the final accounting two letters from FBI Assistant General Counsel Stefania M. Porcelli, who was tasked with investigating the status of Ordonez's seized property. Ms. Porcelli explained that Ordonez's property was initially seized during his 1993 arrest in New Jersey, and was subsequently mailed to the FBI's Los Angeles Field Office where the criminal investigation was taking place. Following Ordonez's conviction, the FBI attempted to return his property, but Ordonez could not

receive the property while in prison, and the FBI was unable to locate his wife in order to give her the items. The property was apparently placed in storage. By the time Ordonez initiated his first federal action for the return of his property in 1997, there was no clear inventory of his belongings, and the government was unable to locate several items listed in the original inventory forms.

Following this unsatisfactory final accounting, Ordonez, still proceeding pro se, filed a motion for summary judgment, which the district court construed as a request for equitable money damages from the government. The government moved to dismiss, and the district court granted the government's motion, reasoning that the court lacked jurisdiction to award damages pursuant to Rule 41(g) because the government did not waive its sovereign immunity. Ordonez timely appealed.

## STANDARD OF REVIEW

We review the district court's interpretation of Rule 41(g) de novo. *United States v. Kaczynski*, 416 F.3d 971, 974 (9th Cir. 2005) (citing *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993)).

## DISCUSSION

Federal Rule of Criminal Procedure 41(g)[1] provides a

---

[1]Rule 41(g) provides, in its entirety:

> Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). Rule 41 was amended and reorganized in 2002. As part of the "general restyling" of the Criminal Rules, what was formerly Rule 41(e) is now codified at 41(g), with minor stylistic changes. Fed. R. Crim. P. 41 advisory committee's note.

mechanism by which any person may seek to recover property seized by federal agents. The Rule states that if a motion to return property is granted, "the court must return the property to the movant." Fed. R. Crim. P. 41(g). But where, as here, the subject property has been lost or destroyed, Rule 41(g) is silent as to what alternative relief, if any, the movant may seek.

Because this Rule 41(g) action is necessarily directed against the United States, *see Okoro v. Callaghan*, 324 F.3d 488, 491 (7th Cir. 2003), concerns of sovereign immunity arise in fashioning any equitable relief. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *accord Balser v. Dep't of Justice*, 327 F.3d 903, 907 (9th Cir. 2003).

**[1]** The federal government may waive its sovereign immunity, but any waiver "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted); *accord FAA v. Cooper*, 566 U.S. ___, 132 S. Ct. 1441, 1448 (2012) ("We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text."). Unlike actions involving private parties, "where a cause of action is authorized against the federal government, the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived." *Lane*, 518 U.S. at 197 (internal quotation marks omitted); *see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 263-65 (1999). Thus, to hold the government liable for money damages, "the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)). We apply traditional tools of statutory construction to determine whether the scope of Congress' waiver is "clearly discernable from the statutory text." *Cooper*, 132 S. Ct. at 1448; *see also Richlin Sec. Serv. Co. v.*

*Chertoff*, 553 U.S. 571, 589 (2008). If it is, then we abide by Congress' instruction; if it is not, then we "construe any ambiguities in the scope of a waiver in favor of the sovereign." *Cooper*, 132 S. Ct. at 1448 (citing *Lane*, 518 U.S. at 192).

Eight other circuits considering the issue have held that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned.[2]

**[2]** We have yet to address directly the question whether sovereign immunity bars an award of money damages in this situation. The closest we have come to commenting was in *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987). There, Martinson was erroneously taken into custody on a recalled warrant, and the police seized nine nineteenth-

---

[2]*Clymore v. United States*, 415 F.3d 1113, 1120 (10th Cir. 2005) ("[T]o the extent the government is no longer in possession of the property and [the criminal defendant] seeks monetary relief, sovereign immunity bars his claim."); *Adeleke v. United States*, 355 F.3d 144, 147 (2d Cir. 2004) ("[The criminal defendant's] equitable claim for money damages should have been dismissed for lack of subject matter jurisdiction because sovereign immunity bars a federal court from ordering the United States to compensate for property that cannot be returned pursuant to Rule 41(g)."); *Okoro*, 324 F.3d at 491 (7th Cir. 2003) ("No one supposes that Rule 41(g) was intended to waive the sovereign immunity of the federal government."); *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001) ("Rule 41(e) contains no such waiver [of sovereign immunity], and we may not use general equitable principles to fill the gap."); *United States v. Potes Ramirez*, 260 F.3d 1310, 1316 (11th Cir. 2001) ("[S]overeign immunity protects the government from money damages sought under Rule 41(e)."); *United States v. Jones*, 225 F.3d 468, 470 (4th Cir. 2000) ("Rule 41(e) does not contain a waiver of sovereign immunity."); *United States v. Bein*, 214 F.3d 408, 413 (3d Cir. 2000) (concluding that Rule 41(e) "does not expressly provide for an award of monetary damages [and therefore] does not waive sovereign immunity"); *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998) ("Rule 41(e) makes no provision for monetary damages, and we will not read into the statute a waiver of the federal government's immunity from such damages.").

century black powder Winchester rifles. *Id.* at 1365. After his release from jail, Martinson filed a Rule 41(e) motion for the return of his guns, which was ultimately denied. *Id.* at 1366. Martinson appealed. While the appeal was pending, however, the guns were destroyed pursuant to administrative forfeiture proceedings. *Id.*

**[3]** Wary of the government's misconduct, we retained jurisdiction despite the government's destruction of Martinson's property:

> When a citizen has invoked the jurisdiction of a court by moving for return of his property, we do not think that the government should be able to destroy jurisdiction by its own conduct. The government should not at one stroke be able to deprive the citizen of a remedy and render powerless the court that could grant the remedy.

*Id.* at 1368. Accordingly, we directed that upon remand, "Martinson should be allowed to amend his motion to request damages if he so desires." *Id.* at 1370.

**[4]** In reaching this conclusion, *Martinson* did not address directly the issue of sovereign immunity.[3] And accordingly, we are not now bound by Martinson in considering the sovereign immunity issue here. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) ("When questions of jurisdiction have been passed on in prior decisions sub silentio" a court is not bound "when a subsequent case finally

---

[3]Alluding to sovereign immunity considerations, the *Martinson* court remarked in a footnote discussing a district court case from another circuit that although "the government had not consented explicitly to be sued and . . . the equitable jurisdiction of the court was not based on express congressional authorization . . . these concerns exist regardless of whether or not damages are sought." *Martinson*, 809 F.2d at 1368 n.2 (citing *Mayo v. United States*, 425 F. Supp. 119, 122 (E.D. Ill. 1977)).

brings the jurisdictional issue" to the forefront).[4] Beginning with this clean slate, we agree with the eight other circuits that have considered the issue, and conclude that Ordonez's claim is barred by sovereign immunity.

We cannot find an unequivocally expressed waiver of the government's sovereign immunity that extends unambiguously to money damages in the text of Rule 41(g). The Rule by its very terms provides only for the "return [of] the property to the movant," nothing more. Fed. R. Crim. P. 41(g). There is no alternative provision for money damages, and such a provision cannot be implied. *Mitchell*, 445 U.S. at 538. The plain language of Rule 41(g) is "clear and unambiguous," *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000), and therefore our "judicial inquiry is at an end," *id.* at 831; *accord Cooper*, 132 S. Ct. at 1448.

Indeed, in the past we have broadly held that there is "no explicit waiver of sovereign immunity" under the Federal Rules of Criminal Procedure. *United States v. Woodley*, 9 F.3d 774, 781 (9th Cir. 1993). There, interpreting Rule 16(d)(2), we determined that sovereign immunity barred the imposition of monetary sanctions against the government. Rule 16(d)(2) permits a court to "prescribe . . . just terms and conditions" to remedy a violation of a discovery order. Fed. R. Crim. P. 16(d)(2)(A).[5] Despite this broad allowance to pre-

---

[4]We note that *Martinson* has been cited for the proposition that sovereign immunity would not bar a Rule 41(g) action in the context of a claim for reimbursement of monies paid pursuant to a wrongful conviction, *United States v. Hayes*, 385 F.3d 1226, 1229 n.2 (9th Cir. 2004), and in several unpublished Ninth Circuit decisions in which parties sought money damages against the United States under Rule 41(g). Nevertheless, *Martinson* did not confront the question of sovereign immunity head-on, as we do now. To the extent *Martinson* has been read as holding that sovereign immunity does not bar a claim for money damages under Rule 41(g), we now clarify that reading is incorrect.

[5]Since the decision in *Woodley*, Rule 16 was amended "as part of the general restyling" of the rules, with no substantive changes made to Rule 16(d)(2). Fed. R. Crim. P. 16 advisory committee's note.

scribe any sanction that is "just," because the Rule "provides no independent authority for a monetary sanction, we decline[d] to recognize a waiver of sovereign immunity . . . ." *Id.* at 781 (distinguishing Federal Rules of Civil Procedure 11 and 37(b), which do "expressly provide for monetary sanctions"). Similarly, Rule 41(g) provides no independent authority for monetary relief, and we are therefore bound by our own precedent to hold that an award of money damages against the government under Rule 41(g) is barred by sovereign immunity.

**[5]** We recognize that there are many valid reasons why one should in fairness be able to pursue a claim for money damages against the government when it wrongfully loses, destroys, or otherwise disposes of seized property. Application of Rule 41(g)—as we are compelled to construe it—can work an injustice to someone losing valuable goods, since there may be no remedy to cure even a flagrant destruction of those goods. *See Hall*, 269 F.3d at 943 (Rosenbaum, D.J., concurring). Unfortunately, however, these equitable considerations—standing alone—cannot waive the government's immunity from suit. *See United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 663 (1947); *Clymore*, 415 F.3d at 1120. No matter how compelling the circumstances, because Rule 41(g) contains no express and unequivocal waiver of the government's sovereign immunity, money damages are not a permitted form of relief. Thus, even when it results in a wrong without a remedy, the federal courts are without jurisdiction to award money damages against the government under Rule 41(g) until Congress tells us otherwise.

**AFFIRMED.**