RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

*v.*

                Nos. 12-6043/6144

SAM DROGANES,

                *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:08-cr-00051-1—David L. Bunning, District Judge.

Argued: July 25, 2013

Decided and Filed: August 27, 2013

Before: COLE and DONALD, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Steven D. Jaeger, THE JAEGER FIRM PLLC, Erlanger, Kentucky, for Appellant. Candace G. Hill, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee. **ON BRIEF:** Steven D. Jaeger, THE JAEGER FIRM PLLC, Erlanger, Kentucky, for Appellant. Candace G. Hill, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

COLE, Circuit Judge. This case arises from a longstanding dispute between Sam Droganes and the United States Government. Droganes is a fireworks dealer in northern Kentucky. In 2007, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

(ATF) raided his business on suspicions that he was illegally selling "display" fireworks. The agents seized more than 800,000 pounds of merchandise, only a portion of which proved to be contraband. In 2009, Droganes pleaded guilty to distributing explosives without a license and agreed to forfeit the seized items "that [were] determined by ATF to be display fireworks." The government then tendered a proposed forfeiture order encompassing all such fireworks, which the district court eventually accepted. Droganes objected to both the breadth of the order and the classification standard the government used to sort the fireworks. Droganes also sought monetary sanctions against the government for allegedly failing to return the seized legal fireworks in a timely manner or to reimburse him for them. The district court rejected all of his claims. We affirm.

I.

Certain acts involving "explosive materials" are prohibited by statute, including "dealing" them without a license, 18 U.S.C. § 842(a)(1), "transporting" them without a license, *id.* § 842(a)(3)(A), and "distributing" them to other unlicensed persons, *id.* § 842(a)(3)(B). What constitutes an "explosive material," in turn, is defined by federal regulations. *See* 27 C.F.R. §§ 555.11, .23. The list includes "display fireworks," which are "[l]arge fireworks designed primarily to produce visible or audible effects by combustion, deflagration, or detonation." *Id.* § 555.11; *see* Notice of List of Explosive Materials, 71 Fed. Reg. 56555-02 (Sept. 27, 2006). Display fireworks are not the same thing as "consumer fireworks," which are "small firework device[s] designed to produce visible effects by combustion." 27 C.F.R. § 555.11. The former are more powerful and therefore subject to a number of additional restrictions, each with corresponding classification standards. The Department of Transportation (DOT), American Pyrotechnics Association (APA), and United States Consumer Product Safety Commission (CPSC) all prescribe standards that are applicable to display fireworks in certain contexts.

Sam Droganes sells consumer fireworks to the public in northern Kentucky through Premium Fireworks, a company he owns and operates. In June 2007, an undercover investigation led by ATF and CPSC confirmed suspicions that he was also

selling display fireworks without a license. ATF subsequently obtained a number of search warrants and seizure warrants for various locations associated with Premium Fireworks and Droganes personally. The execution of these warrants ultimately yielded over 800,000 pounds of fireworks either in or destined to become part of Droganes's stock—some but not all of which were display fireworks. The fact that many of the fireworks were mislabeled contributed to initial confusion over which ones were lawful and which ones were not. ATF arranged for all of the seized fireworks to be shipped to a former ammunition depot in Nebraska for storage and sorting, a process that has taken years.

In July 2008, a federal grand jury indicted Droganes on six counts. Five of those counts related to his unlicensed activities with display fireworks. *See* 18 U.S.C. § 842(a)(1), (a)(3)(A), (a)(3)(B). The sixth count sought forfeiture of twelve specific items in addition to all of the seized display fireworks. *See id.* § 844(c)(1). But testing and separating the display fireworks from the consumer fireworks for the purposes of forfeiture was no small task. Following the indictment, ATF received a report from a government contractor describing the results of initial testing performed on samples from 450 seized fireworks. After disassembling, measuring, and weighing each sample, the contractor classified 187 of them as display fireworks. Further testing performed on 521 additional samples revealed 340 more display fireworks. However, the government later discovered that the contractor had mistakenly used the APA's less-stringent standard to classify the samples and accordingly reassessed the raw testing data using the standard prescribed by 27 C.F.R. § 555.11. A complete inventory eventually produced three lists: a "Green List" containing all of the seized consumer fireworks, a "Red List" containing all of the seized display fireworks, and an "Orange List" containing the remaining seized fireworks of uncertain classification. All told, the Red List totaled 862 items that ATF deemed illegal fireworks subject to forfeiture.

While the inventory was still in progress, Droganes moved for the return of his consumer fireworks under Federal Rule of Criminal Procedure 41(g). This proved to be a problematic request. After more than a year in storage, ATF agents noted that many

of the fireworks had deteriorated into a potentially unsafe condition.  One agent even expressed doubt that the consumer fireworks could be shipped back to Droganes without running afoul of DOT safety regulations.  Notwithstanding these concerns, the district court ordered the government to complete its testing by March 11, 2009, at which time the court instructed the government to provide Droganes with "a list of legal [consumer] fireworks" and a "timetable for [their] return."  On the deadline, Droganes received a letter from the United States Attorney with the required list attached.  The letter also relayed the government's concerns about shipping the listed items and proposed to pay him the wholesale price of the unreturned consumer fireworks instead.  However, the parties were unable to agree on an amount, and the government now contends it could not pay Droganes in any event.

In July 2009, Droganes pleaded guilty to one count of distributing explosives without a license, *see* 18 U.S.C. § 842(a)(3)(B), and agreed to forfeit the "items listed in Count Six of the Superseding Indictment that have been determined by ATF to be display fireworks."  Droganes further agreed to waive "the right to appeal and the right to attack collaterally the guilty plea, conviction, and any sentence that is within the Guideline range as finally determined by the Court."  The district court sentenced Droganes to four months in prison and four months of home confinement.  At sentencing, the district court also accepted the government's proposed preliminary order of forfeiture for the 862 items on the Red List.  Droganes objected on several grounds, including that the proposed order was "void for vagueness" and that he had anticipated "further discussions [with the government] to define the classification of the fireworks."  Before the district court could rule, Droganes also moved for sanctions against the government based on its "refus[al] to return the consumer fireworks and refus[al] to reimburse Mr. Droganes for them."  He sought monetary penalties in an amount equal to "the retail value" of the consumer fireworks and "attorney fees and expenses" incurred in his efforts to secure their return.  The government responded by moving for the destruction of all the seized fireworks, citing the exorbitant cost of storage.

In August 2012, the district court addressed all three outstanding motions at once. The government at that point submitted an amended Orange List classifying all previously unclassified fireworks as either consumer or display. Regarding forfeiture, the court held that Droganes was bound by the terms of the forfeiture provision in his plea agreement, which expressly contemplated that ATF would determine which items were subject to it. The court also held that the government had carried its burden to "prove[] by a preponderance of the evidence that the fireworks on the Red List and those identified as [display] fireworks on the recently amended Orange List are, in fact, [display] fireworks subject to forfeiture." It rejected Droganes's contention that ATF's determination was based on improper methods and classification. Accordingly, the court entered a preliminary judgment of forfeiture against Droganes for 944 items. Regarding sanctions, the court held that sovereign immunity barred it from assessing a monetary penalty against the government. But that did not stop it from admonishing the government for engaging in bad-faith conduct in its dealings with Droganes. Lastly, the court denied the government's motion for destruction of property as moot. Following the court's ruling, ATF returned to Droganes some 272,000 pounds of consumer fireworks.

Droganes now appeals from the district court's amended judgment ordering forfeiture of those fireworks identified in the Red List and the amended Orange List. He also appeals on the issue of whether sovereign immunity deprived the district court of subject matter jurisdiction to impose monetary sanctions against the government. Finally, he raises two new constitutional arguments not pursued below. We address each in turn.

## II.

Droganes's principal argument is that the district court erred in ordering forfeiture of all the items deemed display fireworks by ATF. He says the "district court incorrectly determined that the testing methods used by the government were proper," resulting in an overly broad order. In addressing this argument, we review the district court's factual findings for clear error and its conclusion that such facts "are sufficient

to constitute a proper criminal forfeiture" de novo.  *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001).

## A.

As a preliminary matter, the government contends that Droganes's argument should not get off the ground because he has waived it.  We agree in part.  It is well-established that a criminal defendant can waive his appeal rights in at least two different ways.  One way is by express appellate-waiver in a plea agreement.  *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (noting that a criminal defendant "may waive any right, even a constitutional right, by means of a plea agreement").  With limited exceptions, we will enforce such a waiver if the defendant entered into it knowingly and voluntarily, and if the scope of the waiver extends to the issues raised on appeal.  *See United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir. 2006).  Another way is by failing to file specific objections to a magistrate judge's report and recommendation before pursuing those objections on appeal.  *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140, 147-48 (1985).  In both instances, the consequence is that we will not consider the merits of the waived issues.

The first question is whether the appellate-waiver provision in Drogranes's plea agreement covers his challenge to the forfeiture order, as the government claims.  In that provision, Droganes waived "the right to appeal and the right to attack collaterally the guilty plea, conviction, and any sentence that is within the Guideline range as finally determined by the Court."  It is true enough that a forfeiture order is properly viewed as "an element of [a defendant's] sentence."  *See Libretti v. United States*, 516 U.S. 29, 38-39 (1995).  On its own, that would suggest the appellate-waiver applies here.  Nonetheless, a closer look at what actually transpired in the run-up to the plea agreement points in the opposite direction.  For one thing, Droganes neither knowingly nor voluntarily waived his right to appeal the forfeiture order.  *See Caruthers*, 458 F.3d at 470.  During the rearraignment colloquy, Droganes's attorney specifically stated his understanding that the issue of "the number and value of any [returnable consumer]

fireworks" would "remain open" after entering into the plea agreement. The district court offered confirmation, noting (perhaps incorrectly) that the issue was "not part of the criminal case." The district court again intimated that the issue remained unresolved at sentencing. For another thing, the express terms of the appellate-waiver provision are silent regarding the issue raised here. And it is at least ambiguous whether the "any sentence" language in the provision extends to a corresponding forfeiture order. Because "[p]lea agreements are to be interpreted strictly, with ambiguities construed against the government," *United States v. Jones*, 569 F.3d 569, 572 (6th Cir. 2009), we decline to apply the appellate-waiver provision in this instance.

The second question, then, is whether Droganes waived his specific argument when he failed properly to object to the magistrate judge's report and recommendation. We answer in the affirmative. The magistrate judge found that the government used an appropriate standard (27 C.F.R. § 555.11) to classify the seized fireworks. Likewise, the magistrate judge found that the government had "established by a preponderance of the evidence that the fireworks contained on the Red List . . . [were] subject to forfeiture," demonstrating at least implicit approval of the testing methods used to generate the list. The magistrate judge concluded with a warning that "[p]oorly drafted objections, general objections or objections that require a judge's interpretation [would] be afforded no effect and [would be] insufficient to preserve the right of appeal." But this warning seems to have been lost on Droganes. He only lodged one relevant objection at the time: that he ought to have an opportunity to conduct his own testing of fireworks on the Red List before the district court entered a final order. On appeal, however, Droganes attempts to recycle his since-abandoned argument that the government used an incorrect classification standard and testing methods. The problem is that this very same issue was taken up and decided in the magistrate judge's report and recommendation. Because Droganes failed to lodge his objections the first time around, he has waived his right to pursue them on appeal. *See Cowherd*, 380 F.3d at 912.

Some uncertainty remains, however, as to whether this waiver extends to the amended Orange List, which did not exist at the time of the magistrate judge's report and recommendation.  For this reason, we still proceed to the merits.

B.

The gist of Droganes's argument is that the forfeiture order is drawn too broadly based on unreliable testing methods and a too-stringent classification process.  We review the district court's factual findings on this point for clear error.  *See O'Dell*, 247 F.3d at 679.

Before entering a preliminary order of forfeiture, a district court "must determine what property is subject to forfeiture under the applicable statute," Fed. R. Crim. P. 32.2(b)(1)(A), which in this case is 18 U.S.C. § 844.  "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Fed. R. Crim. P. 32.2(b)(1)(B).  Ultimately, it is the government's burden to "prove forfeiture by a preponderance of the evidence." *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007).

The district court did not err in accepting ATF's determination that 944 items seized from Droganes were subject to forfeiture.  First, the alternative testing methods and classification standards that Droganes champions are neither relevant in this context, nor likely to produce more reliable results.  The APA standard does not purport to provide guidance on the criminal provisions at issue here, nor does it prescribe specific testing methods for quantifying a firework's explosive components.  While the DOT standard at least prescribes procedures and testing criteria, it does not speak in terms of "display" and "consumer" fireworks and it merely references the APA standard at key points.  The CPSC testing method, for its part, is similarly ill-suited for distinguishing between consumer and display fireworks for purposes of 27 C.F.R. § 555.11—using it here would not produce helpful results regardless of their reliability.  Most importantly, Droganes offers no hard proof that the testing protocol ATF actually used produced unreliable results.  His abstract criticisms of 27 C.F.R. § 555.11 are largely non-

responsive to the question of whether the district court relied upon sufficient evidence in determining what of his property was subject to forfeiture.  Fed. R. Crim. P. 32.2(b)(1)(A); *see Jones*, 502 F.3d at 391.

Second, the forfeiture provision in Droganes's plea agreement forecloses his specific argument.  He agreed to forfeit "any and all interest in the items . . . that have been determined by ATF to be display fireworks . . . ."  In other words, he prospectively accepted ATF's unilateral classification decisions in exchange for the dropping of certain charges against him.  Droganes cannot now simply renounce this part of the agreement because he dislikes the consequences.  Courts will enforce a forfeiture provision found in a plea agreement so long as the defendant agreed to forfeit his assets "knowingly and voluntarily."  *See Libretti*, 516 U.S. at 41-42.  There is little question that Droganes did so here—apart from whether or not he intended to preserve his general appeal rights.  The district court even asked Droganes at his rearraignment whether he understood that "if something is determined [by ATF] to have been a display firework, . . . that this plea agreement requires that you forfeit . . . any interest you have in those items," to which Droganes responded, "Yes, sir, I do."  That is both knowing and voluntary.  Thus, the district court's determination of forfeiture was consistent with Droganes's "written plea agreement."  Fed. R. Crim. P. 32.2(b)(1)(B).

### III.

Droganes next argues that the district court erred in denying his motion for compensatory sanctions against the government.  While the court found that the government engaged in otherwise-sanctionable conduct for failing to fully comply with court orders and repeatedly delaying the return of Droganes's consumer fireworks, the court nonetheless held that sovereign immunity barred it from imposing any monetary penalty.  The question on appeal is whether a waiver or other means of overriding sovereign immunity exist in this case.  Because this is purely a question of law, our review is de novo.  *See Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010).

We begin by way of background.  Droganes requested that the district court impose sanctions on the government to compensate him for, among other things, the

value of his unreturned consumer fireworks following an unsuccessful Criminal Rule 41(g) motion to the same effect. He cited Civil Rule 11 as a basis for the proposed sanctions—though it is plainly inapplicable in a criminal proceeding. He also cited the district court's inherent authority, which is generally considered one of a number of implied powers that belong to the federal courts as a necessary incident to their judicial duty. *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812). These powers "allow the courts to formulate procedures for their cases, including a mechanism to control the lawyers before them." *United States v. Aleo*, 681 F.3d 290, 306 (6th Cir. 2012) (Sutton, J., concurring) (describing the "inherent power to sanction" in civil cases). Droganes seems to assume on appeal that the inherent authority to sanction parties remains as robust in criminal proceedings as it is in civil proceedings. We accept this proposition for purposes of deciding the instant case, but note that it is very much up for debate.[1]

Even so, the compensatory sanctions sought here implicate sovereign immunity concerns. Sovereign immunity is the familiar principle that the government cannot be sued except by the consent of Congress. *See, e.g.*, *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Michel*, 282 U.S. 656, 659 (1931). A corollary of this principle is that monetary claims potentially disruptive of the public fisc are similarly barred absent Congress's consent. *See United States v. Horn*, 29 F.3d 754, 761 (1st Cir. 1994); *see also* Aaron Tang, *Double Immunity*, 65 Stan. L. Rev. 279, 292-94 (2013) (describing immunity from monetary judgment as "the second layer of sovereign immunity"). Though neither the primary principle nor its corollary spring from certain origins, *see Horn*, 29 F.3d at 761, both are firmly entrenched in modern law. That is not to say sovereign immunity is absolute. Congress can waive it, but only by an unequivocal expression in statutory text. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Such a waiver will not arise by implication, nor by incident of a "statute's legislative history"

---

[1] At least one recent opinion expressed doubt that a lower federal court ever has the power "to use [its] inherent authority, as opposed to the contempt power established by statute (18 U.S.C. § 401) and implemented by rule (Fed. R. Crim. P. 42), to punish" bad-faith conduct by a party in a criminal case. *Aleo*, 681 F.3d at 306 (Sutton, J., concurring); *see also id.* at 305 n.13 ("It may be questionable whether the inherent authority to sanction even exists in a criminal case such as this one. An argument can be made that Federal Rule of Criminal Procedure 42, covering criminal contempt, is the sole mechanism for punishing bad-faith conduct in criminal cases."). Because we conclude that Droganes's claim is barred by sovereign immunity, we need not reach this question.

without sufficient clarity in the text itself. *Id.* Droganes fails to identify one here, and we can find no obvious candidate. Neither 18 U.S.C. § 401, the statute conferring broad contempt power upon district courts, nor Criminal Rule 42, the procedural rule implementing that power, is sufficiently clear and unequivocal. *But see* 18 U.S.C. § 3006A, Statutory Notes (allowing the assessment of costs against the government for bad-faith prosecutions). Droganes's argument fails for two reasons in the absence of a waiver.

Droganes cannot accomplish by a motion for sanctions what he could not accomplish by his earlier, ultimately unsuccessful Criminal Rule 41(g) motion. That rule provides criminal defendants with a means to seek the return of property seized by federal agents. Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."). It does not say what happens when the property in dispute, as here, has been lost or destroyed. *Ordonez v. United States*, 680 F.3d 1135, 1137-38 (9th Cir. 2012). Nor does it expressly authorize a defendant to sue the government for compensation in such circumstances. *Id.* at 1138, 1140 (holding that "Rule 41(g) contains no express and unequivocal waiver of the government's sovereign immunity"). For this reason, at least nine circuits "have held that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned." *Id.* at 1138 & n.2 (collecting cases). Because Droganes's motion for sanctions is indistinguishable in substance, it suffers the same fate. Having failed to win an order for the return of his consumer fireworks, Droganes sought monetary relief in an amount equal to their "retail value." The appropriate way to do so would have been to file under the Federal Tort Claims Act, 28 U.S.C. § 1346, which constitutes a limited waiver of sovereign immunity for lost or destroyed property claims. We will not endorse an end run on these principles and procedures. *Accord McBride v. Coleman*, 955 F.2d 571, 576 (8th Cir. 1992) ("It does strike us as being a dubious proposition that by filing a contempt motion a claimant can be positioned to recover an unlimited amount of compensatory damages from the United States without being bound by the strictures of . . . the Federal Tort Claims Act . . . .").

Droganes then resorts to arguing that the district court's inherent authority to sanction simply trumps the government's sovereign immunity. This argument is problematic in multiple respects. First, as discussed above, it is hardly clear that a district court has any such authority in the criminal context. *See Aleo*, 681 F.3d at 305 n.13; *id.* at 306 (Sutton, J., concurring). Second, most circuits faced with similar arguments have suggested that the government's sovereign immunity wins when it comes head-to-head with a lower court's inherent authority. *See, e.g.*, *United States v. Horn*, 29 F.3d 754, 761-66 (1st Cir. 1994); *Coleman v. Espy*, 986 F.2d 1184, 1191-92 (8th Cir. 1993); *Barry v. Bowen*, 884 F.2d 442, 444 (9th Cir. 1989). We see no good reason to chart a different course at this time.

None of this is to say that courts are powerless to control the government when it refuses to play by the rules. Congress has already authorized sanctions against the government in criminal cases where the decision to prosecute is "vexatious, frivolous, or in bad faith." 18 U.S.C. § 3006A, Statutory Notes. And it has effected an even broader waiver of sovereign immunity in civil cases. Other circuits have held that the Equal Access to Justice Act, 28 U.S.C. § 2412, authorized sanctions against the government for misconduct under Civil Rule 11. *See, e.g.*, *Adamson v. Bowen*, 855 F.2d 668, 670-71 (10th Cir. 1988). Both of these mechanisms remain in place to protect the integrity of the judicial process and deter litigation abuses committed by the government. *See also Horn*, 29 F.3d at 766 (listing a number of "other weapons in [the courts'] armamentarium"). Unfortunately for Droganes, neither waiver applies in this case.

Nor does our holding condone what the government has done here. Like the district court, we are disturbed by the seemingly interminable delays in testing the seized fireworks, many of which the government knew not to be display fireworks. We are also disturbed by the government's doublespeak regarding the condition of the consumer fireworks and its ability to return them to Droganes. While we ultimately affirm the denial of his motion for sanctions for the reasons given, we acknowledge that Droganes deserved better treatment from his party-opponent.

IV.

Finally, Droganes asserts two new constitutional arguments for the first time on appeal.  He claims that the government violated the Fifth Amendment's proscription against taking private property without just compensation when it refused to return the seized consumer fireworks.  He also claims that the forfeiture order is so broad as to violate the Eighth Amendment's prohibition on excessive fines.  The government responds that both arguments are waived.

It is well established that "'the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal,'" *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 699-700 (6th Cir. 2006)), except in limited circumstances not relevant here, *see Wagenknecht v. United States*, 533 F.3d 412, 418 (6th Cir. 2008).  There can be no doubt that Droganes failed to present his constitutional arguments to the district court in this instance—he admits as much.  While such failure would normally constitute a waiver, in the sentencing context, we have held that the appropriate penalty is plain-error review rather than no review at all.  *See United States v. Hart*, 635 F.3d 850, 858 (6th Cir. 2011) (holding that several constitutional challenges to the defendant's sentence not raised in the district court were subject to plain-error review).  Thus, we may still grant relief if Droganes can show that the district court made a "plain" error that "affects [his] substantial rights."  Fed. R. Crim. P. 52(b).  This he cannot do.

We address the Fifth Amendment argument first.  Droganes fails to recognize that the law distinguishes between a taking for public use under the government's power of eminent domain, which is civil in nature, and the forfeiture of property under the government's police power, which is criminal in nature.  *See AmeriSource v. United States*, 525 F.3d 1149, 1152-57 (Fed. Cir. 2008).  While the former is subject to the Fifth Amendment, the latter is not because "the [g]overnment's seizure and retention of property under its police power does not constitute a 'public use.'"  *Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1341 (Fed. Cir. 2011) (citing *AmeriSource*, 525 F.3d at 1152-57).  This rule does not admit of any exceptions.  Therefore, as the

government correctly concludes, the Fifth Amendment is not implicated here. Droganes's only response is a citation to a thirty-year-old case from the Tenth Circuit. *See Lowther v. United States*, 480 F.2d 1031 (10th Cir. 1973). But that case—a civil one involving a person acquitted of all crimes—is fully consistent with the view that the Fifth Amendment does not apply to police seizures in criminal cases.

His Eighth Amendment argument fares no better. It is true that criminal forfeitures are subject to the Excessive Fines Clause of the Eighth Amendment. *See Austin v. United States*, 509 U.S. 602, 610 (1993). Where the government seeks to punish the defendant by an in personam criminal forfeiture, as opposed to initiating a civil in rem proceeding, the contours of the defendant's Eighth Amendment rights are defined by the "proportionality" test.[2] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (explaining that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish"). A forfeiture order is considered unconstitutional "if it is grossly disproportional to the gravity of a defendant's offense." *Id.*; *see United States v. Carpenter*, 317 F.3d 618, 626 (6th Cir. 2003).

Droganes presents no real evidence in support of his claim. The record does not show that the value of the forfeited property—all of the items on the Red List and the amended Orange List—is "grossly disproportional to the gravity of" distributing explosives without a license, which carries a maximum statutory fine of $250,000, *see* 18 U.S.C. §§ 842(a), 844. In fact, the record shows nothing at all on this score. Droganes engages in some fanciful math based on the government's assertion that the storage costs (totaling approximately $6.5 million) "exceed[ed] [fifty percent] of the value of the [seized] property." But all that assertion proves is that the seized property *could* be worth as much as $13 million, not that it actually is; it could just as easily be

---

[2]Droganes goes on at length about the "instrumentality test" in his principal brief. But this discussion misses the mark for two reasons. First, the instrumentality test simply does not apply to an in personam criminal forfeiture. *See Bajakajian*, 524 U.S. at 333-34. Second, Droganes is arguing a point that no one is contesting—specifically, that the seized consumer fireworks do not bear a sufficient nexus to the offense for which he is being punished. The government only seeks forfeiture of the display fireworks seized from Droganes, and he fails to explain how this amounts to a violation of his constitutional rights. It appears Droganes's argument is little more than an attempt to constitutionalize his objections to the district court's adverse classification determination.

worth $1.  A successful Eighth Amendment argument requires better evidence of disproportionality.  In any event, Droganes lacks a sufficient property interest in the display fireworks subject to the forfeiture order because those items are contraband, and individuals have no property interest in contraband.  *See Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 140 (1939).

V.

For the foregoing reasons, we affirm.