2015 ND 223

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**NEW HOLLAND, LW230B Payloader VIN: ZEF00W23100955104, Defendant**

**and**

**Arnie Rummel, Agent of the North Dakota Bureau of Criminal Investigation, Interested Party and Appellant**

**and**

**Darrell Schrum, Interested Party and Appellee.**

**No. 20140409.**

Supreme Court of North Dakota.

Aug. 31, 2015.

duct violated multiple Rules, or subsections of rules, does not advance the disciplinary pro-

cess.

Gary D. Neuharth, Dickey County State's Attorney, Ellendale, N.D., for plaintiff and appellee.

Jonathan R. Byers, Office of the Attorney General, Bismarck, N.D., for interested party and appellant.

Mark A. Friese (argued) and Neil J. Roesler (appeared), Fargo, N.D., for interested party and appellee.

SANDSTROM, Justice.

[¶ 1]   The State appeals from a district court order finding Arnie Rummel in contempt of court and awarding remedial contempt sanctions to Darrell Schrum.  Although it appears undisputed that Rummel secured a search warrant to seize a payloader as evidence of a crime, while intending to hand it over immediately to a non-law enforcement party, we conclude the district court erred in ordering Rummel and the Attorney General to pay compensatory remedial contempt sanctions without first requiring compliance with the statutory requirements for claims against the State.  We reverse and remand.

I

[¶ 2]   On May 20, 2014, Bureau of Criminal Investigation Special Agent Arnie Rummel applied for a search warrant for the Darrell Schrum Trucking Shop in Dickey County, claiming there was probable cause to believe a stolen New Holland payloader was being concealed in the shop.  The district court issued the search warrant to seize the payloader as evidence of a crime and commanding that it be brought before the court.  Rummel executed the search warrant two days later and took custody of the payloader.  Rummel immediately handed the payloader over to a non-law enforcement, non-government party who trucked the payloader out of North Dakota.

[¶ 3]   On June 4, 2014, Schrum moved for return of property under N.D.R.Crim.P. 41, and a new case number was opened for the motion.  Schrum claimed he purchased the payloader as a good-faith purchaser and requested the court order the property be returned to

him immediately or, alternatively, the property not be transferred or transported further until the ownership issues were resolved. Schrum alleged he purchased the payloader from Jay Hansell in Iowa for $13,500, and Hansell acquired the payloader from Greg Luss in Tennessee for partial satisfaction of a debt Luss owed Hansell. Schrum claimed he asked Hansell for assurances the payloader was not stolen, his insurance company confirmed it was not stolen, he assumed the asking price reflected the significant amount of work and repair the payloader needed, and the payloader was not reported stolen until one month after he had purchased it and had spent significant amounts of time and money into making the payloader operational. He argued he is a good-faith purchaser, the rights of the parties involved needed to be resolved in a civil forum, and the seizure of the payloader under "criminal rules" was inappropriate.

[¶ 4] The district court held a hearing on June 4, 2014. The Dickey County state's attorney and an assistant attorney general appeared on behalf of the State. Schrum and Rummel testified. After the hearing, the court granted Schrum's motion and ordered the State and Rummel to return the payloader to the Dickey County Sheriff for safekeeping by June 6, 2014.

[¶ 5] On June 10, 2014, Schrum moved for contempt and requested remedial contempt sanctions. Schrum claimed the search warrant required law enforcement to seize the payloader and bring it before the court, Rummel released the payloader to a trucking company without authorization, and the payloader was taken out of the state. Schrum contended the court ordered Rummel to return the property to Dickey County, but Rummel did not comply with the court's order. He reported the payloader was in Mexico and later advised counsel the payloader was in Tex-

as. Schrum requested the court order Rummel and the State to reimburse him for the loss and injury he incurred as a result of the contempt in an amount to be determined following a hearing, but not less than $34,148.24, which included compensating him for the cost of the payloader, the expenses he incurred repairing the payloader, the travel expenses he incurred to purchase the payloader in Iowa, insurance, and other expenses. Schrum also requested remedial contempt sanctions of $2,000 per day until the payloader was returned to Dickey County.

[¶ 6] The Dickey County state's attorney responded to the motion and claimed it did not participate in the removal of the payloader from Schrum's property, it did not participate in transferring the payloader to the trucking company, and the sheriff only provided security for Rummel and other agents during the execution of the warrant. The Attorney General responded to the motion, disputing Schrum's factual allegations and arguing the proceeding should not be used as a civil action for Schrum to litigate his civil claims.

[¶ 7] On September 2, 2014, the district court held a hearing, and the court found Rummel was in contempt and said it planned to order Rummel and the State to pay contempt sanctions to compensate Schrum in the amount of $48,839.74 for the value of the property and other costs. The Attorney General objected to the process used and argued the court was giving Schrum the equivalent of a civil judgment without a complaint or summons, litigation on the ownership of the payloader, discovery, and notice the court intended to decide the ownership of the payloader. Schrum filed a proposed order, consistent with the court's instructions.

[¶ 8] On September 24, 2014, the Attorney General filed written objections to the proposed order. The Attorney Gener-

al argued the proceedings circumvented requirements for making a civil claim against the State, including filing a notice of claim with the Office of Management and Budget ("OMB") under N.D.C.C. ch. 32–12.2, Schrum avoided any claims of immunity or qualified immunity, and Schrum avoided any depositions or discovery. The Attorney General claimed its office was not given notice of the hearing on the motion to return property, Rummel was not subpoenaed to testify at that hearing, Schrum admitted there were at least six people with an ownership interest in the payloader, there was no civil proceeding to litigate ownership of the payloader, and the court ordered the payloader should be returned and held pending disposition of the property. The Attorney General also objected to certain language used in the proposed order and argued the court could not award the requested remedial sanctions unless it found Schrum was the legal owner of the payloader and was injured by the deprivation of ownership.

[¶ 9] Schrum responded to the Attorney General's objections, arguing the State was a party and had full notice of all proceedings, the State waived any right to claim it did not have proper notice, and he has proven he is entitled to lawful possession of the payloader. He requested the court find Rummel in contempt for violating the terms of the search warrant and failing to return the property as directed by the June 4, 2014, order. Schrum requested the court find he purchased the payloader in good faith, he had a perfected possessory security interest in the payloader based on his repairs and improvements, his possessory interest would have been protected if Rummel had complied with the warrant and court's order, and Rummel divested him of any meaningful ability to assert his ownership and possessory interests. He also requested the

court order the remedial sanctions be jointly and severally imposed.

[¶ 10] On November 4, 2014, after a hearing on the objections to the proposed order, the district court entered its order on the contempt motion. The court found Rummel was in contempt for transferring possession of the payloader to the trucking company contrary to the search warrant and for failing to return the property as required by the court's June 4, 2014, order. The court found Schrum purchased the property in good faith, Schrum perfected a possessory security interest in the payloader, and Schrum has been permanently divested of his ownership and possessory interests because Rummel failed to comply with the search warrant and is unable to secure the return of the property. The court ordered Rummel and the Attorney General, jointly and severally, remit $53,705.02 to the clerk of court for distribution to Schrum. The court also ordered Rummel and the Attorney General were responsible for any and all additional attorney's fees and costs for any further legal representation related to these proceedings or any appeal in this case.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 27–10–01.2. The appeal is timely under N.D.R.App.P. 4. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 27–10–01.3.

II

[¶ 12] The Attorney General argues Schrum was required to comply with the requirements of N.D.C.C. ch. 32–12.2 for financial claims against the State, including filing a written notice with the director of OMB.

[¶ 13] Chapter 32–12.2, N.D.C.C., governs claims against the State. Section 32–

12.2–04(1) and (5), N.D.C.C., requires a written notice before a claim or legal action may be brought against the state or a state employee:

> A person bringing a claim against the state or a state employee for an injury shall present to the director of the office of management and budget within one hundred eighty days after the alleged injury is discovered or reasonably should have been discovered a written notice stating the time, place, and circumstances of the injury, the names of any state employees known to be involved, and the amount of compensation or other relief demanded.
>
> . . . .
>
> A person bringing a legal action against the state or a state employee for a claim shall deliver a copy of the summons, complaint, or other legal pleading in which the claim is first asserted in the action to the director of the office of management and budget at the time the summons, complaint, or other legal pleading is served in the action.

"Claim," as it is used in N.D.C.C. ch. 32–12.2, means "any claim for money damages brought against the state or a state employee for an injury caused by the state or a state employee acting within the scope of the employee's employment whether in the state or outside the state." N.D.C.C. § 32–12.2–01(1). "Injury" means "personal injury, death, or property damage." N.D.C.C. § 32–12.2–01(2). "Scope of employment" means "the state employee was acting on behalf of the state in the performance of duties or tasks of the employee's office or employment lawfully assigned to the employee by competent authority or law." N.D.C.C. § 32–12.2–01(6). Chapter 32–12.2, N.D.C.C., limits the state's liability for money damages, stating:

> The state may only be held liable for money damages for an injury proximate-

ly caused by the negligence or wrongful act or omission of a state employee acting within the employee's scope of employment under circumstances in which the employee would be personally liable to a claimant in accordance with the laws of this state. . . . No claim may be brought against the state or a state employee acting within the employee's scope of employment except a claim authorized under this chapter or otherwise authorized by the legislative assembly.

N.D.C.C. § 32–12.2–02(1).

[¶ 14] The notice requirement "encourages prompt investigation while evidence is still fresh; repair of any dangerous condition; quick and fair settlement of meritorious claims; and preparation of fiscal planning to meet possible liability." *State v. Haskell,* 2001 ND 14, ¶ 8, 621 N.W.2d 358 (quoting *Cooke v. Univ. of N.D.,* 1999 ND 238, ¶ 7, 603 N.W.2d 504). This Court has held the district court does not have subject matter jurisdiction and dismissal of a claim is proper when a party fails to comply with the notice requirements under N.D.C.C. § 32–12.2–04. *See, e.g., Cooke,* at ¶ 9; *Allied Mut. Ins. Co. v. Dir. of N.D. Dep't of Transp.,* 1999 ND 2, ¶ 16, 589 N.W.2d 201; *Messiha v. State,* 1998 ND 149, ¶ 22, 583 N.W.2d 385. However, the issue of whether the requirements of N.D.C.C. ch. 32–12.2 apply to contempt actions when a party is seeking compensatory remedial sanctions against the State is a matter of first impression in North Dakota.

[¶ 15] Article I, Section 9, of the North Dakota Constitution provides, "Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct." In *Bulman v. Hulstrand Constr. Co., Inc.,* 521 N.W.2d 632, 637 (N.D.1994), this Court held this provision of the North Dakota Constitution should not be read as

an absolute bar to tort liability of the State. *See also Kouba v. State*, 2004 ND 186, ¶ 11, 687 N.W.2d 466. This Court abolished common-law sovereign immunity for tort claims and held the abrogation would be prospective to allow the Legislature to implement a statutory plan for tort claims. *Bulman*, at 640. In response, the Legislature enacted N.D.C.C. ch. 32–12.2 to regulate claims against the State. *Messiha*, 1998 ND 149, ¶ 21, 583 N.W.2d 385. Chapter 32–12.2, N.D.C.C., describes the types of claims the Legislature authorized to be brought against the state or a state employee and explicitly states, "No claim may be brought against the state or a state employee acting within the employee's scope of employment except a claim authorized under this chapter or otherwise authorized by the legislative assembly." N.D.C.C. § 32–12.2–02(1). The Legislature has directed that no claim for money damages may be brought against the state or a state employee except as provided in N.D.C.C. ch. 32–12.2, unless otherwise authorized by the Legislature.

[¶ 16] Schrum moved for contempt sanctions under N.D.C.C. ch. 27–10, claiming he was the owner of the payloader and requesting the court hold the State and Rummel in contempt and impose compensatory remedial contempt sanctions of more than $34,148.24. He submitted an exhibit with his brief on the motion listing the amounts he was requesting for compensation, including the amount he paid for the payloader, mileage and travel expenses related to inspecting the payloader in Iowa, expenses to transport the payloader to North Dakota, material and labor expenses for repairs to the payloader, insurance, and other expenses. Schrum argued that he was the lawful owner of the payloader or, at a minimum, had a perfected possessory lien under N.D.C.C. § 35–20–11, that Rummel seized the payloader and give it to a third party contrary to the

search warrant, that Rummel refused to comply with the court's order to return the payloader, that Rummel's actions fully divested him of his lien and possession, and that Rummel intentionally impaired Schrum's rights. He requested Rummel and the State compensate him for his loss, including all expenses related to the payloader. Ownership of the payloader had not been determined by a court. Schrum was requesting the court decide he was the legal owner of the payloader, Rummel's actions deprived him of that ownership, and he should be compensated for the loss of the payloader.

[¶ 17] Schrum did not bring a separate civil action seeking money damages, but he brought a motion for contempt, seeking compensatory remedial contempt sanctions. A "claim" for purposes of N.D.C.C. ch. 32–12.2 is any claim for money damages brought against the state or a state employee for an injury caused by the state or state employee acting within the scope of employment. N.D.C.C. § 32–12.2–01(1). Section 32–12.2–04, N.D.C.C., expressly provides separate provisions for a "person bringing a claim" and a "person bringing a legal action," and this Court has recognized a claim and a legal action are different and a claimant is required to present a notice of claim regardless of whether the claimant brings a legal action against the state or a state employee. *See Cooke*, 1999 ND 238, ¶ 8, 603 N.W.2d 504. Remedial contempt sanctions include sanctions requiring payment of a sum of money to compensate a party or complainant, other than the court, for a loss or injury suffered as a result of the contempt. *Rath v. Rath*, 2014 ND 171, ¶ 9, 852 N.W.2d 377. A request for financial compensation as a remedial sanction for contempt is a claim for money damages against the state under N.D.C.C. ch. 32–12.2. Section 27–10–01.4, N.D.C.C., does not specifically au-

thorize a claim for compensatory remedial contempt sanctions against the State or state employees. A person who requests compensatory remedial contempt sanctions against the state or a state employee must comply with the requirements of N.D.C.C. ch. 32–12.2.

[¶ 18] Schrum's contempt motion was indistinguishable from a civil tort claim against the State. He requested the court find he was the legal owner of the payloader and order the State to compensate him for the loss of his property caused by Rummel's actions. We conclude Schrum was required to comply with the requirements of N.D.C.C. ch. 32–12.2.

[¶ 19] Our decision is consistent with decisions from other jurisdictions. In *Coleman v. Espy*, 986 F.2d 1184 (8th Cir. 1993), the appellants argued the Farmers Home Administration ("FmHA"), a government agency, violated a court-ordered injunction, and they sought civil compensatory contempt damages. The Eighth Circuit Court of Appeals affirmed the district court's dismissal of the contempt actions, holding the compensatory civil contempt actions were barred under the doctrine of sovereign immunity. *Id.* at 1187.

[¶ 20] The *Espy* court concluded the actions were against the United States government and the contempt proceedings sought to compel the government to compensate the appellants for their losses, including the return of property and compensatory damages for the perceived losses. *Espy*, 986 F.2d at 1189. The court acknowledged the appellants sued for failure to obey a court-imposed order and did not sue for statutory violations, but held the government had to consent to be sued and waive sovereign immunity. *Id.* at 1190. The court said sovereign immunity precludes an award of compensatory damages against the government, the Tucker Act and the Federal Tort Claims

Act are express waivers of sovereign immunity for contract and tort claims, the compensatory contempt damages are indistinguishable from damages that might be awarded in a contract or tort action, and it is a "dubious proposition" that a claimant can be positioned to recover an unlimited amount of compensatory damages in a contempt motion without being bound by the limitations of the Tucker Act or the Federal Tort Claims Act. *Espy*, at 1191 (citing *McBride v. Coleman*, 955 F.2d 571 (8th Cir.1992)). The court explained the injunctions established a standard of care, the appellants claim the FmHA officials failed to live up to that standard of care, the appellants claim they were damaged by the officials' failure, and they seek sanctions from the government to place them in the position they would be in but for the officials' breach. *Id.* at 1192.

[¶ 21] The court concluded the actions were essentially tort actions and recovery must be sought through the Federal Tort Claims Act, not through contempt proceedings. *Espy*, 986 F.2d at 1192. The court explained "the contempt power is not to be used as a comprehensive device for redressing private injuries...." *Id.* (quoting *McBride*, 955 F.2d at 577). The court noted there was no authority that allowed it to imply waiver of federal sovereign immunity for civil compensatory contempt actions in the statute defining courts' contempt powers or in its history. *Espy*, at 1192. The court held it was not within its power "to allow the appellants to proceed with these compensatory civil contempt proceedings and to circumvent the strictures of the Federal Tort Claims Act which Congress specifically provided for this type of relief." *Id.*

[¶ 22] In *United States v. Droganes*, 728 F.3d 580, 583 (6th Cir.2013), the Sixth Circuit Court of Appeals affirmed a dis-

trict court's decision denying a fireworks dealer's motion for monetary sanctions against the government for failing to return seized fireworks. The fireworks dealer pled guilty to distributing explosives without a license and agreed to forfeit the illegal fireworks he did not have a license to sell, but the government was ordered to return the legal fireworks that had been seized. *Id.* at 584–85. The fireworks dealer eventually moved for sanctions against the government for the legal fireworks that were not returned and sought monetary penalties in an amount equal to the retail value of the fireworks and for his attorney's fees and expenses. *Id.* at 585. The Court of Appeals held sovereign immunity barred the district court from imposing a monetary penalty. *Id.* at 589. The court explained the contempt statute does not waive sovereign immunity and the "appropriate way to [seek monetary relief for the loss] would have been to file under the Federal Tort Claims Act, 28 U.S.C. § 1346, which constitutes a limited waiver of sovereign immunity for lost or destroyed property claims." *Droganes,* at 590. The court stated it did not condone the government's actions in this case, and it noted there are other ways to control the government when it refuses "to play by the rules," but it would not "endorse an end run on these principles and procedures." *Id.*

[¶ 23] Similarly, federal courts of appeal have consistently held courts are precluded from awarding money damages against the government on a motion to return property under Fed.R.Crim.P. 41 when the seized property cannot be returned because it was lost or destroyed. *See, e.g., Ordonez v. United States,* 680 F.3d 1135, 1139 (9th Cir.2012); *Clymore v. United States,* 415 F.3d 1113, 1120 (10th Cir.2005); *Adeleke v. United States,* 355 F.3d 144, 151 (2d Cir.2004); *United States v. Hall,* 269 F.3d 940, 943 (8th Cir.2001);

*United States v. Potes Ramirez,* 260 F.3d 1310, 1316 (11 Cir.2001); *United States v. Jones,* 225 F.3d 468, 470 (4th Cir.2000); *United States v. Bein,* 214 F.3d 408, 413–14 (3d Cir.2000); *Pena v. United States,* 157 F.3d 984, 986 (5th Cir.1998).

[¶ 24] Our decision is also consistent with decisions in other state courts. In *In re Bradley Estate,* 494 Mich. 367, 835 N.W.2d 545, 548 (2013), the Michigan Supreme Court held the district court could not exercise its contempt power to punish a sheriff's department's allegedly contemptuous conduct through an award of indemnification damages. The personal representative of a mental health patient's estate brought an action against the sheriff and the sheriff's department for civil contempt when the patient committed suicide after the sheriff's department failed to execute an order requiring the patient be taken into protective custody. *Id.* at 549. The court held the sheriff and sheriff's department had immunity under the Governmental Tort Liability Act ("GTLA") and the court could not exercise its contempt power to punish the department through an award of indemnification damages. *Id.* at 560. The court explained the common-law concept of sovereign immunity was replaced by the GTLA in Michigan, the GTLA bars all suits that seek to impose "tort liability" with several exceptions, "tort liability" is all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages, and the GTLA applies to any action permitting an award of damages to a private party as compensation for an injury caused by the noncontractual civil wrong because it imposes tort liability. *Id.* at 551–57. The court said the contempt statutes allow the court to order the indemnification of individuals who have sustained losses as a result of the contemptuous

conduct and a civil contempt petition seeking indemnification of damages seeks to impose "tort liability." *Id.* at 559. The court held the GTLA applied to contempt actions against the government seeking indemnification damages and prohibited the court from awarding indemnification damages. *Id.* at 560. The court also noted courts have other powers to punish contempt, including fines, imprisonment, or other sanctions that do not impose legal responsibility in the form of compensation. *Id.* at 561.

[¶ 25] Although we hold the state and state employees may not be ordered to pay compensatory remedial contempt sanctions without complying with the requirements of N.D.C.C. ch. 32–12.2, we acknowledge courts have other powers that may be used to punish contempt by the state or a state employee. A court has authority to impose remedial or punitive contempt sanctions. N.D.C.C. § 27–10–01.2. Remedial contempt sanctions include sanctions that are conditioned upon performance or nonperformance of an act required by court order and sanctions that are imposed to compensate a party for loss or injury suffered as a result of the contempt. *Rath*, 2014 ND 171, ¶ 9, 852 N.W.2d 377. Remedial sanctions that are not compensatory may be available against the State under N.D.C.C. § 27–10–01.4, without requiring the moving party to comply with the requirements of N.D.C.C. ch. 32–12.2. Punitive sanctions may also be available. *See* N.D.C.C. §§ 27–10–01.2 and 27–10–01.4.

[¶ 26] The Attorney General claims Schrum did not file notice of his claim with the director of OMB before he moved for compensatory remedial contempt sanctions. The notice-of-claim requirement implicates a court's subject matter jurisdiction for claims brought against the state or a state employee, and dismissal of the claim is proper if the party suing the state fails to comply with the notice requirement. *Voigt v. State*, 2008 ND 236, ¶¶ 4–5, 759 N.W.2d 530. Schrum does not claim he complied with N.D.C.C. § 32–12.2–04(1) or (5), and nothing in the record shows he complied with either subsection. We conclude the district court erred in ordering the State and Rummel to pay compensatory remedial contempt sanctions in favor of Schrum, and we reverse the contempt order.

[¶ 27] Schrum also requested remedial contempt sanctions of $2,000 per day until the payloader is returned to Dickey County under N.D.C.C. § 27–10–01.4(1)(c). Although the requested sanction is a remedial sanction, it is not paid to the moving party to compensate him for his loss, and therefore the requirements of N.D.C.C. ch. 32–12.2 do not apply. The Attorney General does not argue the district court erred in finding Rummel in contempt. On remand the court may decide whether to order another type of sanction.

## III

[¶ 28] We have considered the remaining issues raised in the appeal and conclude they are either without merit or are unnecessary to our decision. We reverse the contempt order and remand.

[¶ 29] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 30] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.